The Honorable James L. Robart

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEVEN W. FISHER,

Defendant.

NO. CR17-00282-JLR

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through Annette L. Hayes, United States Attorney for the Western District of Washington, and Rebecca S. Cohen, Assistant United States Attorney for said District, respectfully submits this memorandum regarding the sentencing of Defendant Steven W. Fisher scheduled for December 3, 2018, at 9:30 a.m.

## INTRODUCTION AND SENTENCING RECOMMENDATION

Defendant Steven W. Fisher pled guilty to one count of Robbery in violation of 18 U.S.C. § 1951, one count of Attempted Robbery in violation of the same statute, and five counts of False Impersonation of a Federal Officer in violation of 18 U.S.C. § 912, and agreed to pay restitution to the victims identified in the Indictment.  The parties were unable, however, to come to an agreement on the amount of the total loss to victim of the robbery or the appropriate amount of restitution.  Accordingly, at the sentencing hearing

Government's Sentencing Memorandum - 1
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the Court will first need to determine the amount of the loss suffered by the victim of the robbery, and then impose judgment and order restitution.

With respect to the loss amount, the government submits as Exhibit 1 to this memorandum a declaration from the victim of the robbery who is identified herein by his initials, B.K., along with a supporting exhibit. The government relies on this declaration and exhibit in support of its assertion that the total loss to B.K. from the robbery was more than $95,000, but not more than $500,000, and that restitution should be ordered in the amount of $128,000.00.[1]

For the reasons set forth below, and based on a loss amount of more than $95,000, but not more than $500,000, the government recommends a sentence of seventy-eight (78) months of imprisonment, followed by three (3) years of supervised release.

## THE OFFENSE CONDUCT

Between January and August of 2017, Defendant engaged in a pattern of criminal conduct that targeted small immigrant owned businesses in Seattle and SeaTac, Washington.  With each of the four businesses he victimized, Defendant began by impersonating a federal agent in an attempt to earn the trust of the employees/victims and gain access to their businesses.  With three of the businesses, Defendant then progressed to burglary, attempted robbery, and/or robbery, culminating in his arrest on August 19, 2017, at a money wiring service in Seattle that Defendant attempted to rob using the ruse of an FBI investigation.  Each of the victims and a description of Defendant's criminal actions are discussed in turn below.

### *Robbery of Red Sea Financial Center*

Red Sea Financial Center ("Red Sea") is a money wiring service in the Central District of Seattle that conducts cash transactions specifically for customers from Eritrea, as well as from other East African nations.  Red Sea helps facilitate the transfer of its

---

[1] The government provided the declaration to defense counsel on November 14, 2018, and counsel has informed the government that they do not intend to cross-examine B.K. at the sentencing hearing.  Accordingly, the government informed B.K. that he is not required by subpoena to attend the sentencing.

Government's Sentencing Memorandum - 2
(*United States v. Fisher*, CR17-00282-JLR)

1  clients' money to locations outside of the State of Washington (and outside of the United
2  States), such as to family members in Eritrea and other East African nations.

3        At approximately 6:30 p.m. on January 25, 2017, Defendant gained entry to Red
4  Sea by identifying himself as a federal agent to the owner (identified herein by his
5  initials, B.K.), and showing B.K. a fraudulent badge.  Defendant told B.K., who was
6  working alone in the store at the time, that Red Sea had conducted a bad transaction and
7  that he needed to look at Red Sea's transactions for the day.  Defendant also showed B.K.
8  a document that he claimed was a search warrant.  After B.K. showed Defendant
9  information on transactions conducted at Red Sea that day, B.K. asked to look in a back
10 room.  When B.K. questioned why Defendant would need to look in that room,
11 Defendant pulled out what appeared to be a real gun and pointed it at B.K.  Defendant
12 instructed B.K. to unplug the standalone computer tower that maintains the hard drive for
13 the security cameras inside the business, and ordered B.K. to open the safe.  After B.K.
14 unlocked the safe and removed almost all of the cash that was inside, Defendant took the
15 cash from the safe and placed it into his backpack.  Before leaving Red Sea with the
16 computer tower and the backpack containing cash from the safe, Defendant locked B.K.
17 in a back room by padlocking the door.  Shortly after Defendant's departure, a friend of
18 B.K.'s came into the store and was able to break him out of the back room and call 911.[2]

19       The parties disagree about the amount of cash Defendant stole from Red Sea on
20 January 25, 2017.  As set forth in the Declaration of B.K. and discussed in more detail
21 below, the government has shown that Defendant took approximately $128,000.
22 Defendant is arguing for a number close to $65,000.

23       ***The SeaTac Victims***

24       On June 28, 2017, Defendant visited two businesses in SeaTac, Washington, a
25 grocery store and a small business that offers travel, money wiring, telephone and food

26

27  _____

28  [2] The facts set forth in the prior paragraph are taken from both the parties' Plea Agreement and the Declaration of
    B.K.

services.  At both businesses Defendant represented himself as an FBI agent and said he was there investigating a case.  He also displayed a fraudulent FBI badge.  The business that offers travel, money wiring, telephone and food services was burglarized early the next morning (June 29, 2017), and approximately $2,000.00 in cash, three telephones, and paperwork was stolen.[3]

### *The Attempted Robbery of Dahabshil, Inc.*

Dahabshil, Inc. ("Dahabshil") is a money wiring service located on Martin Luther King Jr. Way South in the City of Seattle.  Like Red Sea, Dahabshil conducts cash transactions and helps facilitate the transfer of its clients' money to locations outside of the State of Washington (and outside of the United States).

At approximately 7:30 p.m. on July 26, 2017, Defendant called Dahabshil and spoke to the manager.  Defendant identified himself to the manager as Jack Ryan,[4] and said he was a special agent with the FBI.  At Defendant's request, the manager met with him behind a neighboring business, where Defendant told the manager that a suspect was planning to break into Dahabshil later that night and the FBI would be watching.  Defendant told the manager that he would need to remove all of the cash from the business.  The manager did not remove the cash from the business and instead called 911 to report the incident.

Less than one month later, on August 19, 2017, at approximately 11:30 a.m., Defendant entered Dahabshil carrying a briefcase and again identified himself to the manager as an FBI agent.  Defendant showed the manager a fraudulent FBI badge and credentials, and said he was at the business to obtain surveillance files.  Defendant told the manager that if he failed to provide the files, he would obtain a search warrant.  Because he recognized Defendant from the prior incident in July and feared that he was

---

[3] Defendant was not charged in this case for the June 2018 burglary because the United States does not have jurisdiction over the offense.

[4] "Jack Ryan" is a fictional character in novels written by author Tom Clancy, as well as the character that actor Harrison Ford portrayed in the movies Patriot Games and Clear & Present Danger.

Government's Sentencing Memorandum - 4
(*United States v. Fisher*, CR17-00282-JLR)

being robbed, Defendant activated the panic alarm, which notified law enforcement. The Seattle Police Department (SPD) responded to Dahabshil and arrested Defendant.

### *Follow-Up Investigation*

SPD subsequently obtained warrants to search the briefcase Defendant carried into Dahabshil and the car he drove to the scene, a silver 2005 Mini-Cooper Defendant had parked about five blocks away. The briefcase contained, among other things, a bi-fold wallet with fraudulent FBI credentials for "Jack Ryan" and a fraudulent FBI badge. Also in the briefcase were, among other things, several pairs of handcuffs, a handcuff key, bear spray, bolt cutters, and a realistic looking gun with a silencer. A picture of the fake badge and credentials, as well as the realistic looking gun and silencer, are included below:



SPD also found numerous items in the Mini-Cooper, including papers stolen during the July 27 burglary in SeaTac discussed above.

## THE CURRENT CHARGES AND PLEA AGREEMENT

After his arrest by SPD on August 19, 2017, Defendant was detained in the King County Jail pending state charges until Friday, October 28, 2017, when he was taken into federal custody. Defendant has remained in custody since his arrest.

On November 8, 2018, a federal grand jury issued an Indictment charging Defendant with one count of Robbery, one count of Attempted Robbery, and five counts of False Impersonation of a Federal Officer. On July 9, 2018, Defendant pled guilty to all seven counts. Pursuant to the Plea Agreement, the government agreed to recommend a total term of imprisonment of no more than the high end of the advisory guidelines range determined by the Court at the time of sentencing. The Plea Agreement does not

Government's Sentencing Memorandum - 5
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  contain an agreement with respect to the loss amount, and calls for the Court to determine
2  the loss amount at sentencing.

3  <u>**LOSS AMOUNT**</u>

4          The Court's determination of the loss amount will impact the calculation of
5  Defendant's guidelines range.  Accordingly, before turning to the offense-level
6  calculation, the government will first address the amount stolen by Defendant during the
7  robbery at Red Sea Financial Center on January 25, 2017.  In doing so, the government
8  must first acknowledge that there is no definitive way to calculate the loss amount to the
9  penny because B.K. does not know the specific dollar amount taken from the safe.  Nor
10 does he know the exact value of the computer tower that Defendant also took during the
11 robbery.  B.K. can, however, very closely approximate the amount taken from the safe.

12         As explained in the commentary to the Sentencing Guidelines, "[t]he court need
13 only make a reasonable estimate of the loss.  The sentencing judge is in a unique position
14 to assess the evidence and estimate the loss based upon that evidence."  U.S.S.G.
15 § 2B1.1, Application Note 3(c).  In this case, an estimate of the loss is easy to calculate
16 because Red Sea has provided transaction data from the days leading up to the robbery
17 and B.K. has knowledge of when he last removed cash from the safe.   These two pieces
18 of information, when taken together, explain approximately how much money – about
19 $128,000 – was in the safe at the time of the robbery, almost all of which was taken by
20 Defendant.  B.K.'s Declaration explains his loss calculation, which the government has
21 moved to file under seal because it contains detailed information about the way Red Sea
22 conducts its business and handles cash transactions.  Defendant, on the other hand, has
23 offered nothing more than his own self-serving statement as support for the proposition
24 that he only stole approximately $65,000 in the robbery.  The government asks the Court
25 to reject this figure and adopt the loss amount of $128,000 put forth by the government,
26 which is based on the detailed information provided in the Declaration of B.K. and the
27 records from Red Sea, and is consistent with the number provided by B.K. to SPD on the
28 evening of the robbery.

Government's Sentencing Memorandum - 6
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## SENTENCING GUIDELINES

The government agrees with Probation's calculation of the advisory guidelines range, as set forth below:

**Group 1, Counts 1 and 2 (Robbery and Impersonation):**

| | | |
|---|---|---|
| Base Offense Level (Robbery): | 20 | § 2B3.1 |
| Use of Dangerous Weapon | +4 | |
| Physical Restraint | +2 | |
| Loss > $95,000, <$500,000 | +2 | |

**Adjusted Offense Level for Group 1 = 28**

**Group 2, Counts 6 and 7 (Robbery and Impersonation):**

| | | |
|---|---|---|
| Base Offense Level (Robbery): | 20 | § 2B3.1 |

**Adjusted Offense Level for Group 2 = 20**

Because the offense levels for Counts 3-5 are more than 9 or more levels less serious than 28, they do not impact the combined total offense level, and therefore are not included in this memorandum.

The multiple count adjustment results in a one level increase to the higher of the adjusted offense levels (because there are 1.5 units), resulting in a combined adjusted offense level of 29.  U.S.S.G. § 3D1.4.  After a three level decrease for acceptance of responsibility, the total offense level is 26.

The government also agrees with Probation that Defendant has a criminal history category of I.  With a total offense level of 26 and a CHC of I, the advisory guidelines range is 63-78 months if the Court finds a loss amount of over $95,000 and less than $500,000.[5]

---

[5] If the Courts finds a loss amount of over $20,000 and less than $95,000, the total offense level would with 25, resulting in an advisory guidelines range of 57-71 months, and the government would recommend a sentence of 71 months. The government sharply disputes this loss amount for the reasons explained above.

Government's Sentencing Memorandum - 7
(*United States v. Fisher*, CR17-00282-JLR)

**18 U.S.C. § 3553 ANALYSIS**

A total sentence of seventy-eight (78) months of imprisonment followed by three (3) years of supervision is sufficient, but not greater than necessary, to achieve the objectives outlined in Title 18, United States Code, Section 3553(a).

**A.  Nature and Circumstances of the Offense.**

Over the course of approximately eight months in 2017, Defendant preyed on small businesses run by immigrant owners, focusing on small money transmitter businesses that dealt largely in cash transactions.  After first winning the trust of the owners and employees who worked in these businesses by impersonating federal officers, Defendant than shattered that trust by robbing, burglarizing, and/or attempting to rob them.  Defendant successfully robbed the owner of Red Sea Financial Center at gunpoint and locked him up before leaving with approximately $128,000 in cash in January of 2017.  With a realistic looking gun in his briefcase and through the use of a fake FBI badge and credentials, Defendant again attempted the same crime in August.  He likely would have succeeded but for the quick thinking of an employee who recognized Defendant from a prior impersonation the month before.  These crimes were well planned and skillfully executed.  The financial hardship that the robbery caused to Red Sea Financial Center is obvious, as is the fear and terror that Defendant's actions imposed on all of the victims, especially B.K.  This traumatization is best demonstrated through the victim impact statement submitted by B.K., who explained to the Court that he does not wish to attend sentencing due to fear for his safety and the psychological harm it may trigger.

**B.  History and Characteristics of the Defendant.**

There is one mitigating factor working in Defendant's favor – his lack of any criminal history outside of driving violations and a theft conviction from 1993 when he was eighteen years old.  This factor, however, was already accounted for in the calculation of the advisory guidelines range, as the range of 63-78 months was determined using a criminal history category of I.  Although the government does not

Government's Sentencing Memorandum - 8
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

dispute that Defendant was facing financial hardships and going through a divorce at the time of these offenses, this fact should have little impact on the Court's sentence, as it does not in any way excuse or justify his actions.  Defendant was raised in a stable and loving environment and does not struggle with substance abuse issues (although he does admit to some limited use of cocaine).  He has proven capable of holding down a job and living a law abiding life, yet chose to deal with his problems through a life of crime when faced with hardship.  Not only did Defendant steal from others, he did so in a calculated and violent manner, relying on his victims' deference to law enforcement to rob them of their safety and their livelihood.  When all of Defendant's history and characteristics are considered, the government asks the Court to find that a sentence of 78 months is appropriate and just.

### C. Promoting Respect for the Law, Providing Just Punishment, and Affording Adequate Deterrence to Criminal Conduct.

Deterrence is especially relevant in this case, in part to deter others from engaging in similar conduct, but even more importantly to deter Defendant from reoffending after his release from prison.  Defendant's actions were brazen and risky, and he demonstrated a willingness to go to the extreme when faced with personal and financial challenges. The government respectfully submits that a sentence of 78 months is needed both to adequately convey to Defendant that this type of conduct cannot be repeated when he is released, and to appropriately punish Defendant for his reckless and violent behavior.

//

//

//

Government's Sentencing Memorandum - 9
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

For the foregoing reasons, the Government requests the Court to sentence defendant Steven W. Fisher to a total term of seventy-eight (78) months of imprisonment, followed by three (3) years of supervised release and restitution in the amount of $128,000.00.

DATED this 26th day of November, 2018.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

*/s/ Rebecca S. Cohen*
REBECCA S. COHEN
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-6526
Fax Number: 206-553-4073
Email: rebecca.cohen@usdoj.gov

Government's Sentencing Memorandum - 10
(*United States v. Fisher*, CR17-00282-JLR)

UNITED STATES ATTORNEY
700 STEWART STREET, STE. 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney(s) of record for the defendant.

      *s/ Josielynn Estrella*
JOSIELYNN ESTRELLA
Legal Assistant
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-4222
Fax: 206-553-0755
E-mail: Josielynn.estrella@usdoj.gov

Government's Sentencing Memorandum - 11
(*United States v. Fisher*, CR17-00282-JLR)